182211 Rommelson-Batista Ferreira v. William B. Barr Good morning, Your Honors. May it please this Honorable Court, Attorney Todd Pomelo on behalf of Rommelson-Ferreira. Good morning. May I reserve two minutes of rebuttal time? Yes. Here today along with Co-Counsel Kimberly Williams and Jeffrey Rubin. Now, I'm not going to restate all of the issues and arguments that have been addressed today by predecessor counsel. I'm intimately familiar with the Pereira v. Sessions case. Indeed, our office has represented Wesley Pereira for the last five years before the immigration courts, before the U.S. Supreme Court as co-counsel, and again on remand from the U.S. Supreme Court. And what has been missing from the arguments today is the command of the U.S. Supreme Court. It said repeatedly throughout the decision that the notice to appear contemplated by 1229A is a putative document if it lacks the date and time of the hearing. Putative means so-called. It's no different than mailing somebody a ham sandwich and later on asking for the court to send a hearing notice. It has no force and effect under the law. And what is going on here is all the courts throughout the country, on the circuits, the Now, as far as some of the questions I've heard this morning, what's really important for this court to delve into, and we've cited it in our brief, is the regulations. 8 CFR 1239.1 is captioned Notice to Appear. And it says every removal proceeding conducted under Section 240 of the Act in Parent 8 U.S.C. 1229A to determine the deportability or intermissibility of an alien is commenced by the filing of a Notice to Appear. 1229 is also captioned Commencement of Removal Proceedings. What's interesting is this regulation cross-references 62 Federal Rule 10332 at page 449. Page 449 in the regulations define what the Notice to Appear will be. It's going to be on Form I-862. It says I-862 and in the upper right-hand corner it says Notice to Appear. This is what starts a removal proceeding. And in that proposed regulation from January 3, 1997, the charging document which commences removal proceedings under Section 240 of the Act will be referred to as the Notice to Appear, Form I-862, replacing the Order to Show Cause.  Notice to Appear is a document of the amended Act indicating that the time and place of the hearing must be on the Notice to Appear. So from its inception, the government knew a Notice to Appear required a date and time and location of hearings, yet ignored it for 21 years until the U.S. Supreme Court got involved, issued an 8-1 decision saying that every court in the country, including this one, got it wrong, that a putative document lacking a date and time is not a Notice to Appear. Now 1239.1 is cross-referencing the very same statute interpreted by the Prairie Court. And Judge Wood in her Santiago case, Ortiz-Santiago, stated that the same position articulated by DHS in this case was absurd. That is that regulations can contradict clear statutory command issued by Congress. She said it was absurd. The regulation cannot have a different definition of a Notice to Appear. And we believe that that is the same issue here because the regulation cross-references 1229.8. 1229.8 is defined by Pereira. And to say it's merely only a narrow issue is really missing the point. The Court construes the entire statute as... We're not saying it's a narrow issue. That's what Pereira, the Pereira Court, cautioned, that their holding was narrow. The Pereira Court, respectfully, Judge Salier, answered a narrow question by broadly construing a statute. They talked about the 10-day requirement to get counsel. They did not characterize their holding as broadly construing anything. They persistently characterized their holding as responding only to a narrow question. Correct. And the Supreme Court, in my experience, doesn't say things like that lightly. Well, it said including as a trigger for the stop-time rule. Right. So it has to apply to more than the stop-time rule, according to the Supreme Court. The issue there was whether Wesley Pereira's time had stopped. The Supreme Court didn't say that a hearing notice stopped his time. The hearing notice is issued by the Immigration Court, a separate agency. How do you respond to the point we made with both of the prior counsel for petitioners, that suppose the regulation simply said you can start a removal proceeding with an abridged form of the notice to appear, which form need not include A and B, but if it doesn't include them, they shall be provided duly in advance of the proceeding? Why couldn't the agency do that? Well, the agency did not do that. But that's not my question. Couldn't the agency do that? We start a proceeding with an abridged form of the notice to appear. Well, we don't believe they can, because I think 1229A answers the question in that it's captured commencement of removal proceedings, but even if we assume that they could, the regulations here cross-reference 1229A, which the Supreme Court defines in Carrera as requiring the date and time and location for an alien to appear. And they talk about all the ramifications of receiving a noncompliant notice. Receiving a putative NTA can result in an in absentia removal order. They talk about that on page 4 of the slip of opinion. They don't just limit it to talking about the stop time rule. They talk about the right to secure counsel, having a 10-day gap so that you can secure counsel. And more importantly, the Court talks about this is quintessentially definitional language. This is the only place in the INA where it is defined. And what is going on here is that, Your Honor, as you may be aware, on Halloween, about 10,000 immigrants showed up to court with their lawyers. They took flights. They waited in line at immigration courts throughout the country because one response is to write fake dates on MTAs. People were getting hearing notices for Saturday at midnight, for February the 30th. That was one response the government took, which they claimed they would not do before the U.S. Supreme Court during an oral argument. Another instance is repeated issuances of notices to appear lacking date and time. The Asylum Office is doing this. USCIS is doing this. Detained clients are still receiving notices to appear lacking dates and times. They're being filed throughout the courts. When Thoreau was issued, the immigration courts actually had signs on their doors saying they would not accept notices to appear without dates and times. And this has to go back to the regulation. The original implementation in January 1997 was referencing the amendment to the Act that eliminated order to show cause and it required, for the first time, one document. Why do we know it's one document? There's over two dozen references in Pereira v. Sessions to a written notice, the notice to appear. There's the footnote that Professor Torrey mentioned in Pereira that talks about it being a singular document. It's all referred to in the singular. If you're relying on the earlier statement that you began by the agency itself saying you must have everything on it, hasn't that, just as far as the regulations, forget about the statute, hasn't that been effectively replaced by the current regulations now before us? These regulations all went into effect around the same time. They used the language whenever practicable. The Supreme Court dealt with that regulation so they did not need to defer the regulation because the statute was unambiguous. The Chevron deference needed not be employed. And here, again, like Chief Judge Wood stated in her decision, the position of the government is absurd that you can have a different regulatory... But I thought you were referring to a statement made in one of the regulations back at the time they actually adopted this form. That's correct. It's from January 3rd, 1997. It's page 449 of the Federal Registry, volume 62. And you would say that's a currently binding rule of the agency itself? Yes, that's correct. I'll reserve time for rebuttal. Thank you. May I please request for the respondent? Once again, I know that the Court is familiar with our arguments here. I'm just going to take a few minutes to talk about some of the new issues that were raised just in this case. What about this 1997 regulation that counsel just mentioned? I have to admit that I'm not familiar exactly with what... I think he stated that it was a proposed rule. I don't believe that that is something that actually went into effect. The regulations that actually control how proceedings are commenced in an immigration court are ACFR 1003.13 through 15 and then 18. So those are the regulations that are at issue here. And those are the regulations that you say the government's position is consistent with? Yes. Okay. And then what do you say... We heard another new argument that I hadn't heard from either of the prior counsel. And that's that the statute actually does control and specify how you commence a proceeding. And the reliance was based on the title of the Section 1229, which is titled Initiation of Removal Proceedings. So I think Petitioner's counsel is saying, well, if we look at the title that says Initiation of Removal Proceedings, and then when we say look under the text that says In Removal Proceedings, written notice shall be given, a notice to appear. Okay. A couple things. First, it's certainly not clear that Congress was intending that this notice to appear was the document that initiated the removal proceedings, that that was something that was a jurisdictional requirement. Certainly they didn't go so far as to specify that, and had they intended to specify that, they probably would have said so in far more clear language. Ten of this Court's assister circuits have looked at that language, and not one of them have found that that is unambiguously what that found. So at the very minimum, it would be considered ambiguous. But certainly it doesn't state that this is how proceedings are commenced. Instead, we have the regulations that state how things are commenced. Additionally, even if this is something that happens during the initiation of removal proceedings, it doesn't necessarily mean that this is a jurisdictional rule that Congress is stating this is how a jurisdiction attaches to an immigration court. As long as that answers your question, I was going to move on to Petitioner discusses in his brief whether or not this Court owes our deference to the Board's decision. And just to clarify, so Kaiser v. Wilkie did come out and it states that first the Court should ensure that a regulatory provision is genuinely ambiguous, and then look to see if the agency's interpretation of that genuinely ambiguous provision is of the character and context that would warrant deference. Now, I'm happy to talk about why the Board's decision would be the second problem, but I don't think that this Court needs to get there. The Second and the Ninth Circuits both looked at the regulations language itself and came to its own conclusions before then stating that their decisions were supported by the Board's decision. The Third Circuit and the Fourth Circuit didn't defer to Bermuda's Cota at all. I think that this Court can just find that the regulations language unambiguously explains how jurisdiction attaches in immigration court or how claims commence in immigration court without needing to defer to the agency's interpretation. So I don't think that the Supreme Court's holding in Kaiser v. Wilkie affects the analysis in this case. One other thing that Petitioner mentioned in his brief, he states that the agency did not follow its own regulatory provisions in providing the information about the hearing time and date were practicable and states that it would have been practicable for the agency to provide that information. There is a presumption of regularity here that the agency would comply with its regulations unless there's any evidence to the contrary. Now, the agency did eventually provide this information to him and even if the Supreme Court may have said that it could theoretically be feasible for the agency to design a system that could provide this information, it doesn't mean that in Petitioner's individual case that it was practicable for them to do so. So there's no reason to believe that the agency did not comply with its own regulations. And then as long as the court doesn't have any additional questions regarding jurisdiction, I was going to just shift to Petitioner's claims regarding his motion to remand based on his claim that he was prejudiced by ineffective assistance of counsel. Now, the agency properly denied that motion to remand because it was both procedurally and substantively deficient. This court has found that the board doesn't abuse its discretion when it denies a motion alleging ineffective assistance of counsel because the alien failed to comply with the procedural safeguards that matter of Rosada as long as that board decision is not arbitrary when it does so. Now, here Petitioner didn't comply with any of those regulations and he didn't present any meritorious reason why he would be exempt from those regulations. It would often be very difficult to do that on direct review. We encountered that with Strickland arguments in criminal cases where someone wants to argue ineffective assistance of counsel and what we generally say is we don't even decide it. It will be handled in the habeas position. Here, would the Petitioner be able to file a new motion to reopen based on ineffective assistance of counsel, comply with the procedures, and then get a decision? At this point, he would be untimely, but I see nothing that would prevent it. He is only allowed to file one motion to reopen. That's in the statute. You get one statutory motion to reopen. Then it becomes a little tricky then because you're forcing someone to gather than all the Rausser, Lasda, Rosada in a very short time frame. Well, are you forcing him? I mean, there's nothing that compelled him to file the initial motion when he did. Is that right? That is true. He could have waited and filed it another time. One thing is, though, that he didn't attempt to comply with any of these. He didn't even supply an affidavit. So we don't even know what he would have testified to had he testified to anything. We don't know what his agreement with his attorney was. We don't know whether his attorney told him if you plead the fifth and you don't testify here, it could adversely affect your application. We have no information because he didn't even put forth a statement. He certainly, even if he didn't have time to report his former attorney to the bar or provide an adequate opportunity for his attorney to respond to the allegations, he certainly could have included an affidavit that at least laid out his perspective of what he would have said had he testified or what his agreement was with his attorney. So since he didn't even comply with the minimal requirements, the agency wasn't arbitrary in finding that his failure to comply with any of those requirements was fatal to his motion. Additionally, the agency's alternative finding that he failed to show any prejudice is also supported in the record. As I stated, petitioners didn't supply any affidavits to explain his equities. And to the extent that he claims that his attorney should have filed relief with other government agencies, even if his attorney had filed relief with other government agencies, it still wouldn't have had any effect on his removal proceedings because they wouldn't have been adjudicated alongside his removal proceedings. So he shows no prejudice there. And even to the extent that he says that he would have asked for continuances, he hasn't shown that under the current policies that he would have been granted the continuances as immigration judges are no longer allowed to allow continuances for speculative relief that an alien hasn't even applied for yet. So his motion did fail on both the procedural and the substantive grounds. And for those reasons, I'd ask that this Court deny the petition for review. Thank you very much. Thank you. I just want to briefly address the Lozada claim. This is the second issue in our brief. The Lozada case generally requires a motion to reopen. And you're supposed to report an attorney to the BBO, or you're supposed to explain if not, why not. What had occurred is while this case was pending on petition for review, there was a three-judge panel decision issued by the BIA where on the face of the record alone they found ineffective assistance of counsel. That was for an attorney that missed filing deadlines and cost his client the opportunity to adequately present the case. And we believe that that language of that case supported the motion for the remand here and that it was error for the BIA not to remand because the judge's decision here, I.J. Sterla, issued a lengthy decision talking about the hardship that my client's wife and five citizen children would face, their mental health, financial struggles, et cetera. And what the judge was troubled by was that there was no explanation by the defendant because he pleaded the fifth regarding why he failed to file tax returns in certain years, whether he had rehabilitated himself. There was evidence that he had used cocaine in the past. But there could have been very good reasons why he didn't plead the fifth, or indeed his counsel could have told him not to plead the fifth. Nothing's obvious on its face here. I think it's manifestly unreasonable on the record because these are crimes that do not present any admissibility issues. Resisting arrest and assault on a police officer and denying deportable crimes, they don't have any basis on admissibility. No, but his testimony, he might have admitted everything and had worse facts than the government already had. So he made a wise decision to go with what he had without that. Well, he could have testified that the cases are in direct appeal and he could have explained his tax strategy. We don't know. That's why I think a remand would be appropriate in these circumstances given the judge's language that appeared to show that he was balancing the positive equities in favor of my client. And what do you say about the government's position that that 1999 or whatever it was statement you read to us actually wasn't from a regulation? It's from the Code of Federal Regulations. It's from January 3, 1997. I thought it was from the Federal Registry. Federal Registry. Which is not a statement of the law. It's from Federal Registry, Volume 62, Number 2, Friday, January 3, 1997, and the proposed rules. So it's just a narrative statement about a proposed rule. Right, and it's referring to the charging document that will be filed will be called the Notice to Appear, that it replaces the former Order to Show Cause, that it's on Form I-862, and in addition the proposed rule implements the language of the amended act and that that document requires that the time and place of hearing must be on the Notice to Appear.  The statute in this case is that the Notice to Appear was created by Congress for the first time in 1997. Indeed, the words Notice to Appear never appeared in the Immigration Acts prior to April 1, 1997. And again, as Judge Wood had indicated, that the regulations cannot contradict the clear statutory command of Congress in AUSC 1229A as interpreted in Carrera. And we respectfully request that this honorable court allow this petition for review and issue a reason. Can I ask you one question? Yes, sir. Please. The basic premise of your argument is that an agency like a court which has no subject matter jurisdiction is powerless to act and therefore anything it does is a nullity. Is that correct? In these circumstances, that is correct. All right. Then why, if that's correct as applied in these circumstances, why on earth would the Supreme Court adjudicate the Carrera case? Because Carrera's proceedings commenced by the same sort of Notice to Appear as was true here would have been a complete nullity if that's what the court really meant. And I assume that nine justices would realize that. Someone would realize it.  Number one, there are instances in the past where the court rules on issues of law and does not address whether the jurisdiction was properly before the court. Yes, but in all of those instances, the court notes that it is bypassing the jurisdictional question. It doesn't just plunge ahead and disregard a lack of jurisdiction. Another answer to your question might be that perhaps the court believes this is a claims processing rule as is now being articulated for the government for the first time. And if that were the case, Leslie Carrera was seeking cancellation of removal but was denied that opportunity. Yes, that's a possibility. That is a possibility, but again, the court didn't answer that particular question. And again, given that the government is articulating for the first time this claims processing rule, perhaps either supplemental briefing by the parties or a remand to the BIA would be appropriate in these circumstances for that issue alone. And again, I thank you all for your time. Thank you so much. Thank you. Thank you.